**Commonwealth v. D'Orazio**

C.P. of Lancaster County, no. 4909-2002.

*Jeff Conrad,* for the Commonwealth.
*Doug Conrad,* for defendant.

GEORGELIS, *P.J.,* January 8, 2004—The defendant has filed a direct appeal to the Superior Court. He was directed to file a statement pursuant to Pa.R.A.P. 1925(b). He has done so, and the Commonwealth has filed its answer. This memorandum of opinion is issued to briefly address the grounds raised by the defendant.

This case arises out of an assault on Jose Rivera, which occurred on June 29, 2002, and which resulted in the defendant's arrest for criminal attempt at criminal homicide[1] and aggravated assault.[2] On July 8, 2003, a jury

---

1. 18 Pa.C.S. §901.
2. 18 Pa.C.S. §2702(a)(1), (4).

found the defendant guilty of both crimes. On September 30, 2003, I sentenced him to 20 to 40 years incarceration.

The defendant challenges my denial of his objection to the introduction of photographic images culled from surveillance equipment at the crime scene; my overruling his objection to testimony from the Commonwealth's medical expert witness; and the duration of the sentence I imposed upon him.

The defendant first contends that I erred in denying his objection to the introduction of photographic images taken from surveillance equipment installed at the crime scene. He asserts that the Commonwealth failed to produce testimony which established the authenticity and relevancy of such photographs. The photographs at issue contained imprints of two separate and different dates and times. Imprints of date and time were located at the top and at the bottom of the photographs. At the suppression hearing, the Commonwealth presented testimony through Beth Detz, housing manager of the Lancaster City Housing Authority, who explained the type of surveillance equipment used by the Housing Authority, its placement throughout the building, when and by whom it was installed and its functionality. N.T.S.H. 41-42. She explained that the images were captured continuously and that the images presented to her accurately depicted the areas that were videoed. N.T.S.H. 41-45. She also testified that the equipment was new and working properly, but, at that time, two dates and times were listed on the images, one at the bottom and one at the top. N.T.S.H. 43-46. She testified, from her experience in working with the machine, that she knew the

time at the bottom of the images was correct and the date at the top was correct. N.T.S.H. 46.

I found that the images, purported to reflect the crime scene at the time the crime was committed, were relevant to the Commonwealth's assertion that the date and time of the images corresponded with the date and time the defendant committed the crime. The images were authenticated through the testimony of Beth Detz. She corroborated the Commonwealth's assertion that the date and time of the commission of the crime corresponded to the time located at the bottom of the photographs and the date located at the top of the photographs. Thus, I ruled the images admissible. The weight of the disparity of the two different dates and times located on the photographs was a matter for the jury to consider.

The defendant next avers that I erred in overruling two of his objections to testimony from the Commonwealth's medical expert witness, Dr. Michael J. Reihart. The defendant's first objection was that Dr. Reihart's answer to the Commonwealth's question of what caused the victim to be so sick was non-responsive. N.T.T. 207. At the time of the objection, Dr. Reihart responded to the question by requesting permission to diagram his answer. N.T.T. 208. I found that Dr. Reihart's request to diagram his answer was responsive to aid his answer to the Commonwealth's question. Thus, I overruled the defendant's objection.

The defendant's second objection was to Dr. Reihart's testimony as to the manner in which some of the victim's wounds were inflicted. N.T.T. 224-25. He claims that I overruled his objection without affording counsel the opportunity to identify the basis. During a side-bar,

defendant's counsel communicated his basis for the objection, after which I overruled it. Now, the defendant contends that the Commonwealth failed to give notice that Dr. Reihart was going to testify as an expert, identifying the manner in which certain wounds were inflicted, and he contends that the Commonwealth failed to establish that Dr. Reihart was qualified to render an opinion on the manner in which certain wounds were inflicted.

Dr. Reihart was asked if the wounds he viewed on the victim were slashing or full penetration stab wounds. N.T.T. 224-25. He answered that some were slashing and others were full penetration. N.T.T. 225. After qualifying Dr. Reihart, the Commonwealth offered him as an expert in the area of emergency medicine capable of rendering an expert opinion in the field of emergency medicine and trauma to the human body and the treatment of such trauma. N.T.T. 201-202. Defense counsel stated that he had no objections to Dr. Reihart being offered as an expert in the area of emergency medicine and trauma to the human body and treatment of such trauma. N.T.T. 202. Accordingly, I accepted him as an expert. N.T.T. 202. Clearly, the knowledge to distinguish the disparity between a slashing and penetrating knife wound is included in the field of trauma to the human body. Dr. Reihart was an expert in this field. I concluded that he was qualified to render an opinion on the manner in which the wounds were inflicted.

The defendant last contends that I abused my discretion by imposing a sentence of 20 to 40 years. Although the sentence I imposed is within the standard range of the sentencing guidelines, he asserts that this case involves circumstances where the application of the guide-

lines would be clearly unreasonable under 42 Pa.C.S. §9781(c)(2).

"To constitute a manifest abuse of discretion, a sentence must either exceed the statutory limits or be manifestly excessive. . . . The discretion of the sentencing judge must be accorded great weight because he is in the best position to weigh various factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference." *Commonwealth v. Minott,* 395 Pa. Super. 552, 555-56, 577 A.2d 928, 929 (1990). (citations omitted)

Furthermore, a trial court's discretion in sentencing matters is constrained only by two tenets: (1) that the sentence must not exceed the statutory limits and (2) that the record must show that the court considered the sentencing guidelines and adhered to the general principle that the sentence imposed should be the minimum sentence consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant. *Id.* at 558, 577 A.2d at 930.

The defendant recognizes in his Pa.R.A.P. 1925(b) statement that the sentence I imposed is within the standard range of the sentencing guidelines. However, he asserts that circumstances exist where the application of the guidelines would be unreasonable, but he cites no facts or circumstances that would make the application of the guidelines clearly unreasonable.

Prior to sentencing the defendant, I considered his age, educational background, prior offenses, work history, family history, medical history and character. N.T.S. 22-27. I considered his statement before me at the sentencing, statements from his attorney and character witnesses,

the entire pre-sentence investigation report, the mandatory minimum requested by the Commonwealth and the sentencing guidelines. N.T.S. 22-27. I concluded that the appropriate sentence was 20 to 40 years in prison.

Accordingly, I conclude that all of the grounds asserted by the defendant are without merit.